**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

In Re Application of

OLEGS FILS,

        Petitioner.

-----------------------------------------------------------X

Misc. Case No:

**EX PARTE APPLICATION FOR THE ISSUANCE OF A SUBPOENA DUCES TECUM PURSUANT TO 28 U.S.C. § 1782 TO ZIP AVIATION, LLC**

*MEMORANDUM OF LAW IN SUPPORT OF EX PARTE* **APPLICATION FOR THE ISSUANCE OF A SUBPOENA DUCES TECUM PURSUANT TO 28 U.S.C. § 1782 TO ZIP AVIATION, LLC**

**EVERSHEDS SUTHERLAND (US) LLP**

Sarah E. Paul
Attorney-in-Charge
Eversheds Sutherland (US) LLP
1114 Avenue of the Americas
New York, NY 10036
Tel:  212-389-5000
Fax:  212-389-5099
SarahPaul@eversheds-sutherland.com

**COUNSEL FOR PETITIONER**

Giselle S. Guerra
**EVERSHEDS SUTHERLAND (US) LLP**
Texas Bar No. 24075173
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 470-6115
Facsimile:  (713) 654-1301
giselleguerra@eversheds-sutherland.com

*Of counsel for Petitioner*

42636464.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**PRELIMINARY STATEMENT** ...................................................................................1

**STATEMENT OF FACTS** ........................................................................................3

**ARGUMENT** ...........................................................................................................5

      **I.**      **Mr. Fils's Application Easily Meets the Threshold Requirements of Section 1782** ...........................................................................................7

      **II.**     **The Discretionary *Intel* Factors Weigh in Favor of Permitting Mr. Fils' Application** .........................................................................................9

**CONCLUSION** .......................................................................................................13

42636464.1

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*In re Application of Aldunate*,
  3 F.3d 54 (2d Cir. 1993).................................................................................6

*In re Application of Euromepa S.A.*,
  51 F.3d 1095 (2d Cir. 1995)........................................................................9, 10

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
  No. CIV.M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) .....................7, 9, 11, 12

*In re Application of Hill*,
  No. M19-1 17 (RJH), 2005 U.S. Dist. LEXIS 10838 (S.D.N.Y. June 3, 2005).......................1

*In re Application of Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006)...............................................................2, 6, 7

*In re Auto-Guadeloupe Investissement S.A.*,
  No. 12 MC 221 RPP, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)...............................10, 11

*In re Bayer AG,*
  146 F.3d 188, 194 (3d Cir. 1998)......................................................................11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F .3d 76, 81 (2d Cir. 2012).........................................................................6

*In re Chevron Corp.*,
  633 F.3d 153 (3d Cir. 2011)............................................................................10

*In re Chevron Corp.*,
  709 F. Supp. 2d 283 (S.D.N.Y. 2010)...................................................................10

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002)...........................................................................7, 9

*In re Esses*,
  101 F.3d 873 (2d Cir. 1996).............................................................................1

*In re Gushlak*,
  No. 11-MC-218 NGG, 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012).....................................1

*In re Hornbeam Corp.*,
  No. 14MISC424PART1, 2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015),
  *aff'd*, 722 F. App'x 7 (2d Cir. 2018) and *aff'd*, 2017 WL 5515857 (S.D.N.Y.
  Feb. 17, 2017) ...........................................................................................1

## TABLE OF AUTHORITIES
### (Continued)

Page

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)..................................................................................................... *passim*

*Lancaster Factoring Co. v. Mangone*,
    90 F.3d 38 (2d Cir. 1996)...........................................................................................8

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015)......................................................................................8

*In re Merck & Co.*,
    197 F.R.D. 267 (M.D.N.C. 2000) .............................................................................8

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
    No. CIV1:08CV269LEK/RFT, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008).....................11

*RTI Ltd. v. Aldi Marine Ltd.*,
    523 F. App'x 750 (2d Cir. 2013) ...............................................................................8

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004).......................................................................................10

*In re Servicio Pan Americana de Proteccion C.A.*,
    354 F.Supp.2d 269 (S.D.N.Y. 2004)........................................................................11

## RULES STATUTES

28 U.S.C. § 1782.................................................................................................... *passim*

28 U.S.C. § 1782(a) ...........................................................................................2, 5, 7

Latvian Civil Procedure Law Article 137(1) ................................................................4

Latvian Civil Procedure Law Article 140(1) ................................................................4

42636464.1

Petitioner Olegs Fils ("Mr. Fils"), by his counsel, hereby submits this Memorandum of

Law In Support of Ex Parte Application for the Issuance of a Subpoena Duces Tecum Pursuant to

28 U.S.C. § 1782 to Zip Aviation, LLC (the "Application"), for the purpose of obtaining discovery

from Zip Aviation, LLC ("Zip Aviation") in connection with proceedings currently before a court

in Latvia (Case No.C30657918) (the "Latvian Proceedings").[1]   Mr. Fils's proposed Rule 45

subpoena (the "Subpoena") to Zip Aviation is attached hereto as Exhibit 1.

## PRELIMINARY STATEMENT

The purpose of 28 U.S.C. § 1782 is to assist foreign courts and litigants in situations exactly

like this one.  The documents requested by the Subpoena are critical to the Latvian Proceedings,

yet will be difficult if not impossible for the Latvian court to reach.  Consistent with the liberal

discovery provided under the Federal Rules, the standard to issue a subpoena under § 1782 is low,

especially when the recipient of the subpoena is not a party to the foreign proceeding.

Section 1782 authorizes a federal district court to order discovery of documents and

testimony for use in a foreign proceeding from any person who resides or is found in the court's

district:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal, including criminal
> investigations conducted before formal accusation.  The order may be made …
> upon the application of any interested person and may direct that the testimony or

---

[1]  Mr. Fils requests this Order *ex parte,* as is routine in Section 1782 applications.  *See In re Gushlak*, No. 11-MC-218 NGG, 2012 WL 1514824, at *3 (E.D.N.Y. Apr. 30, 2012) (stating that "[r]espondents' argument that granting the application ex parte somehow prejudiced [respondent's] due process rights is frivolous" and explaining that "courts routinely grant § 1782 applications ex parte, limiting respondents' challenges to after the subpoena is served") (internal citations omitted); *accord In re Esses,* 101 F.3d 873, 874 (2d Cir. 1996); *In re Application of Hill,* No. M19-1 17 (RJH), 2005 U.S. Dist. LEXIS 10838, at *1 (S.D.N.Y. June 3, 2005).   It is widely recognized that Section 1782 applications are properly handled *ex parte*, and the fact that Mr. Fils brings a Section 1782 application is alone understood as a "good and sufficient reason[ ]" for proceeding *ex parte*.  *In re Hornbeam Corp.*, No. 14MISC424PART1, 2015 WL 13647606, at *4 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018), and *aff'd*, 2017 WL 5515857 (S.D.N.Y. Feb. 17, 2017).

statement be given, or the document or other thing be produced, before a person appointed by the court.  28 U.S.C. § 1782(a).

A successful application must meet three requirements: (1) the person(s) from whom discovery is sought must reside or be "found" in the district of the court issuing the discovery order; (2) the discovery must be "for use in" a proceeding before a foreign or international tribunal; and (3) the applicant must be an "interested person."  28 U.S.C. § 1782(a); *see Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 256-59 (2004) (discussing the statutory prerequisites); *In re Application of Microsoft Corp.,* 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (same).  Because all three requirements are met here, this Application should be granted.

Specifically, Zip Aviation, which is a helicopter tour company located in this district, possesses documents and information concerning the circumstances of infidelity committed by Ms. Santa Bernahl (previously – Ms. Zamuele) ("Ms. Bernahl"), Mr. Fils's former wife, and her then-lover, now husband, Mr. David Bernahl ("Mr. Bernahl").  Mr. Fils is an "interested person" because he is a party to the Latvian Proceedings (the claimant), and his counsel in Latvia intends to use the documents obtained from Zip Aviation in the Latvian Proceedings.  Upon information and belief, Zip Aviation possesses documents that will assist in demonstrating that Ms. Bernahl was unfaithful to Mr. Fils in at least August 2017, while the parties were still married, thus justifying the cancellation of the various gift agreements that are at the heart of the Latvian Proceedings.

In addition, the four discretionary factors analyzed by courts when considering § 1782 applications—the so-called "*Intel* factors"—all support an order authorizing the Subpoena seeking discovery from Zip Aviation.  *See Intel,* 542 U.S. at 264.

## STATEMENT OF FACTS

Mr. Fils and Ms. Bernahl married on October 1, 2016.  In early 2018, Ms. Bernahl told Mr. Fils she wanted a divorce.  *See* Decl. of Olegs Fils.  The couple divorced on March 29, 2018 upon Ms. Bernahl's initiative.  *See* Decl. of Olegs Fils.  During their marriage, Mr. Fils gifted to Ms. Bernahl numerous valuable belongings and funds valued at several million *Euros*.  *See* Decl. of Olegs Fils.  These gifts, which are the subject of various gift agreements, included, but were not limited to, the following:  Harry Winston engagement ring (valued at 199 600,00 EUR); Tiffany & Co jewelry set consisting of earrings and a necklace (valued at 18 000,00 EUR); Harry Winston Chandelier Cluster earrings (valued at 88 400,00 EUR); Rolex watch (valued at 9 600,00 EUR); a Porsche Macan (valued at 67 760,00 EUR); a Porsche Turbo (valued at 133 100,00 EUR); IWC Da Vinci Automatic Moon Phase 36 alligator watch (valued at 15 400,00 EUR); and 3 600 000,00 EUR in cash.  *See* Decl. of Olegs Fils.

After the couple divorced, Mr. Fils discovered that Ms. Bernahl had been in an extra-marital relationship with Mr. Bernahl.  *See* Decl. of Olegs Fils.  Mr. Fils discovered posts from private social media accounts in which Mr. and Ms. Bernahl are seen exchanging loving words with each other and are seen embracing and kissing while posing for pictures in New York and elsewhere during the time Mr. Fils and Ms. Bernahl were still married. *See* Decl. of Olegs Fils. Mr. and Mrs. Bernahl married in July 2018—just months after Mr. Fils and Ms. Bernahl's divorce was finalized and Mr. Fils learned of the affair.  *See* Decl. of Olegs Fils.  The couple resides together in California.

In light of these circumstances, Mr. Fils has sought to recover the sentimental items and a portion of the funds he gifted to Ms. Bernahl, valued at approximately €2.4 million that are the subject of the various gift agreements, in the Latvian Proceedings.  *See* Decl. of Olegs Fils.  The

legal basis of the claim in Latvia is gross ingratitude of Ms. Bernahl towards her then-spouse, Mr. Fils, as well as her sole role in the breakdown of the couple's marriage.  *See* Decl. of Olegs Fils; Decl. of Agris Bitans.

Upon information and belief, around the time of the divorce, Ms. Bernahl covertly carried out several transactions to dispose of or transfer *de facto* all her valuable assets, aiming to circumvent any claims to those assets Mr. Fils might have post-divorce.  Some funds were transferred to foreign accounts, but most of the assets were formally transferred to, or encumbered on behalf of, Ms. Bernahl's parents.  Mr. Fils has therefore also brought claims to declare these transactions fraudulent and void within the Latvian Proceedings.  *See* Decl. of Olegs Fils.

It should be noted that the Latvian court has already found that Ms. Bernahl acted in bad faith because she provided misleading information to the Latvian court and concealed her assets, including some of the property and funds Mr. Fils gifted her.  *See* Decl. of Agris Bitans.  The Latvian court has therefore repeatedly sustained Mr. Fils' applications to secure his claim by seizing movable property, real estate, and cash belonging to, as well as payments due to, the defendants in the Latvian Proceedings.[2] *See* Decl. of Agris Bitans.

Mr. Fils seeks discovery from Zip Aviation to aid in the Latvian Proceedings, because, upon information and belief, Zip Aviation possesses documents and information concerning the infidelity committed by Ms. Bernahl and her then-lover, Mr. Bernahl, as well as gross ingratitude towards Mr. Fils.  On July 5, 2018, Mr. Bernahl posted a photo on his Instagram social media profile @dbernahl, where he is pictured embracing Ms. Bernahl at a Manhattan helipad with a Zip Aviation helicopter in the background.  *See* Decl. of Olegs Fils.  On information and belief, this

---

[2]  Under Articles 137(1) and 140(1) of the Latvian Civil Procedure Law, the court may secure a claim provided, *inter alia*, there are reasonable grounds to believe that enforcement of the court judgment otherwise may become problematic or impossible (in this case— mostly due to concealment of assets, towards which the claim could be enforced), and that *prima facie* the claim has legal basis.  *See* Decl. of Agris Bitans.

photo was taken in August 2017, based in part on the construction progress of the New York skyscrapers in the background of the picture.  Additionally, Ms. Bernahl's credit card statement reflects charges by Zip Aviation on August 12 and 13, 2017, in the amount of $3,765.00 and $3,880.00, respectively.  Ms. Bernahl paid her credit card bill with funds gifted to her by Mr. Fils during their marriage.

Through the Subpoena, Mr. Fils seeks documents and information showing that Mr. and Ms. Bernahl used Zip Aviation's services together while Ms. Bernahl was still married to Mr. Fils—namely that Ms. Bernahl spent money gifted to her by her spouse, Mr. Fils, to cover expenses while on vacation with her then-lover.

Counsel for Mr. Fils in Latvia intends to use the documents obtained from Zip Aviation in the Latvian Proceedings to demonstrate that Ms. Bernahl was unfaithful to Mr. Fils in at least August 2017, thus demonstrating both gross ingratitude towards Mr. Fils and promoting the breakdown of their marriage, which justifies cancellation of the gift agreements.  *See* Decl. of Agris Bitans.

## ARGUMENT

Section 1782(a) provides, in relevant part, that: [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal .... The order may be made ... upon the application of any interested person .... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.  28 U.S.C. § 1782 (2013).  The highly-relevant and narrowly-tailored discovery sought by Mr. Fils is precisely the sort of discovery contemplated by 28 U.S.C. § 1782.  Section 1782 "is the product of congressional

efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel,* 542 U.S. at 247.  The evolutionary process of this effort has led to a discovery device that has had "increasingly broad applicability."  *See In re Application of Aldunate,* 3 F.3d 54, 57 (2d Cir. 1993).  The "twin-aims" of Section 1782 illustrate its broad applicability: to "provid[e] [an] efficient means of assistance to participants in international litigation in our federal courts and [to] encourag[e] foreign countries by example to provide similar means of assistance to our courts."  *Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F .3d 76, 81 (2d Cir. 2012) (citations and internal quotations omitted).

With those aims in mind, the Court must first determine whether the applicant satisfies three threshold requirements: (1) the person from whom discovery is sought must reside or be found in the jurisdiction of the district court to which the application is made; (2) the discovery must be "for use in" a proceeding before a foreign tribunal; and (3) the application must be made by an "interested person" as related to the underlying foreign proceeding.  *See* 28 U.S.C § 1782; *In re Microsoft,* 428 F. Supp. 2d at 192.

Once the Court determines that the three threshold requirements are met, the Court may also consider four discretionary factors, known as the *Intel* factors, to determine the appropriateness of ordering discovery, namely, whether: (1) the documents and testimony sought are within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the foreign court or government would be receptive to U.S. federal-court assistance, in consideration of the nature of the foreign tribunal and the character of the proceedings underway abroad; (3) the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) the subpoena

contains unduly intrusive or burdensome requests. *In re Microsoft*, 428 at 192-93 (citing *Intel*, 542 U.S. at 264-65).

As discussed in further detail below, Mr. Fils' application satisfies all three threshold requirements, and each discretionary factor weighs in favor of permitting the Subpoena to Zip Aviation. The use of Section 1782 to obtain discovery from Zip Aviation will promote efficiency and transparency in the Latvian Proceedings, and may also encourage the Latvian court to provide reciprocal assistance if the time should arise when a party seeks similar assistance from the Latvian court. Accordingly, this Court should issue an order permitting the service of the subpoena pursuant to 28 U.S.C. § 1782.

## I.      Mr. Fils's Application Easily Meets the Threshold Requirements of Section 1782.

*First,* the Application meets the initial requirement of Section 1782 because Zip Aviation "resides or is found in" the Southern District of New York. 28 U.S.C. § 1782(a). Specifically, Zip Aviation maintains an office at the Downtown Manhattan Heliport in New York City, and is, therefore, "physically present" in the Court's jurisdiction. *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. CIV.M19-88 BSJ, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) (determining that the threshold requirements of Section 1782 were met and noting that respondent "maintains its headquarters in New York, and thus is 'found' within the district"). Further, Ms. Bernahl's credit card statement reflects a payment to that same company, listed on her credit card statement at "ZIP AVIATION MANH," in August 2017. *See* Declaration of Olegs Fils. *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002).

*Second,* the Application satisfies the next prong of the Section 1782 analysis because the requested discovery is "for use in" the Latvian Proceedings, which constitute "foreign proceedings." *Intel Corp.*, 542 U.S. at 257-58 (noting that Section 1782 includes conventional

7

civil proceedings in foreign tribunals).  *See also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail.").  Here, Mr. Fils intends to use the documents obtained from Zip Aviation to demonstrate that Ms. Berhahl, his wife at the time, carried on an extra-marital affair.  *See* Decl. of Agris Bitans.  Such documents will help Mr. Fils demonstrate that Ms. Bernahl showed gross ingratitude towards Mr. Fils and was the sole promoter of breakdown of their marriage.  Under Latvian law, Ms. Bernahl's (1) gross ingratitude and (2) her sole role in the breakdown of the marriage each constitute an independent legal basis for cancellation of the gift agreements between Mr. Fils and Ms. Bernahl.  *See* Decl. of Agris Bitans.

*Third*, Mr. Fils satisfies the "interested person" requirement of Section 1782.  The definition of that phrase is interpreted broadly to "include [] a party to the foreign litigation, whether directly or indirectly involved," *In re Merck & Co.,* 197 F.R.D. 267, 270 (M.D.N.C. 2000), as well as a party that has "a reasonable interest in obtaining judicial assistance."  *See RTI Ltd. v. Aldi Marine Ltd.*, 523 F. App'x 750, 752 (2d Cir. 2013) (citing *Intel*, 542 U.S. at 256-57).  *See also Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes "a party to the foreign ... litigation.").  Here, Mr. Fils is a party to the Latvian Proceedings (the claimant), and he has "a reasonable interest in obtaining judicial assistance."  *See RTI Ltd.*, 523 F. App'x at 752.  *See also* Decl. of Olegs Fils.  Accordingly, Mr. Fils qualifies as an "interested person" within any fair construction of that phrase.  *See id.*

## II.     The Discretionary *Intel* Factors Weigh in Favor of Permitting Mr. Fils' Application.

Where, as here, the Application meets the statutory requirements of Section 1782, the Court has broad discretion to grant the Application.  *See In re Edelman,* 295 F.3d at 181.  The "twin aims" of Section 1782, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts," suggest that a court should lean "heavily in favor of generous federal court assistance."  *See In re Gemeinshcaftspraxis,* 2006 WL at *4 (citation and internal quotations omitted); *In re Application of Euromepa S.A.,* 51 F.3d 1095, 1102 (2d Cir. 1995).  The four discretionary factors applied by the courts, considered in light of these twin aims, weigh in favor of allowing the Application.

*First,* it would be difficult, and potentially impossible, for Mr. Fils to obtain the requested discovery absent this Court's assistance and approval of the Application.  Because Zip Aviation is not a participant in the Latvian Proceedings, the Latvian court lacks jurisdiction to compel Zip Aviation to produce the information and documents outlined in the Subpoena.  The Supreme Court noted in *Intel* that when discovery is sought from a participant in the foreign proceeding (unlike Zip Aviation here), the need for Section 1782 aid may not be as apparent as it ordinarily is when evidence is sought from a nonparticipant in the foreign proceeding.  *Intel,* 542 U.S. at 264.  In contrast, nonparticipants who are outside the foreign tribunal's jurisdictional reach – such as Zip Aviation – may have relevant evidence not obtainable by the tribunal without the aid of Section 1782.  *Id.*

Here, the interests of fairness and comity favor granting Mr. Fils' Application because the Latvian court has no authority to compel a third party like Zip Aviation to produce the requested materials, as nothing in the Latvian disclosure regime applies extra-territorially to Zip Aviation or

could otherwise be used to obtain disclosure of these documents. The only other potential option to obtain this evidence would be through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters; however, this route is complex, drawn out, and may ultimately be unsuccessful. Thus, the first of the discretionary factors favors Mr. Fils. *See In re Chevron Corp.,* 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010).

    *Second,* there is no indication that the Latvian court would be unreceptive to judicial assistance from a federal court. *See In re Chevron Corp.,* 633 F.3d 153, 162 (3d Cir. 2011) (stating that "[i]nasmuch as relevant evidence is presumptively discoverable, the party opposing discovery under section 1782(a) has the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application") (internal quotations omitted) (citations omitted). *See also* Decl. of Agris Bitans. Indeed, courts are reluctant to deny a Section 1782 application absent "'authoritative proof' that a foreign [tribunal] would reject §1782 assistance." *In re Auto-Guadeloupe Investissement S.A.,* No. 12 MC 221 RPP, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012) (citing *In re Application of Euromepa S.A.,* 51 F.3d at 1099). Put another way, a court should only rely upon a "clear directive" from the foreign jurisdiction in opposition to assistance from a federal court. *See In re Application of Euromepa S.A.,* 51 F.3d at 1100; *see, e.g., Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 84 (2d Cir. 2004) (finding foreign court unreceptive to American judicial assistance where foreign ministry of justice and prosecutor made specific requests to the district court to deny the discovery sought). A district court should not attempt to evaluate the foreign tribunal's receptiveness. *See In re Application of Euromepa S.A.,* 51 F.3d at 1099 ("We think that it is unwise - as well as in tension with the aims of section 1782 - for district judges to try and glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law.");

*In re Gemeinshcaftspraxis,* 2006 WL 3844464, at *6 (stating that "proof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery"); *see, e.g., In re Auto-Guadeloupe Investissement S.A.,* 2012 WL 4841945, at*6 (concluding that respondent failed to present "authoritative proof" that the French court would reject Section 1782 assistance where respondent's proof- including French statutes and legislative history- "only concern[ed] general principles of discovery under French civil law").  Here, because there is no indication that the Latvian court would be unreceptive to the Court's assistance, the second discretionary factor weighs in favor of Mr. Fils.

*Third,* the Application is not an attempt to avoid foreign evidence-gathering restrictions, but instead is a good-faith request to obtain information that will be admissible in the Latvian Proceedings.  This discretionary factor is not about whether the foreign court's discovery rules provide a means to access the requested information.  *See Intel,* 542 U.S. at 247 (stating that "§ 1782 contains no threshold requirement that evidence sought from a district court would be discoverable under the law governing the foreign proceeding").  Furthermore, the fact that discovery rules under Latvian civil procedure are not identical to the Federal Rules of Civil Procedure does not signify an attempt to circumvent foreign evidence-gathering restrictions. *See Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. CIV1:08CV269LEK/RFT, 2008 WL 3884374, at *7 (N.D.N.Y. Aug. 18, 2008) ("There is no reason to assume that a country that has not adopted a discovery requirement as extensive as ours would be either offended or reject the assistance.") (citing *In re Bayer AG,* 146 F.3d 188, 194) (3d Cir. 1998)); *see also In re Servicio Pan Americana de Proteccion C.A.,* 354 F.Supp.2d 269, 275 (S.D.N.Y. 2004) (stating that "a foreign court's procedural discovery limitations, as opposed to substantive limits on the admissibility of

discovered evidence, should not prevent a district court from enabling a foreign litigant to obtain admissible evidence here pursuant to Section 1782").

Instead, the only issue is whether Mr. Fils' Application is a good faith attempt to obtain relevant, necessary evidence that he may not otherwise be able to obtain. *See In re Gemeinschaftspraxis,* 2006 WL 3844464, at *7 (finding that the applicant "has a good faith belief that it will be able to use the evidence" and concluding that "[a]bsent any indication of bad faith on [applicant's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor"). Here, Mr. Fils' Application is made with the good faith belief that the discovery will lead to evidence that is relevant to the annulment of the gift agreements, proving gross ingratitude of Ms. Bernahl, as well as proving Ms. Bernahl's sole role in the breakdown of the couple's marriage that is the subject of the pending Latvian Proceedings. There is nothing pursuant to Latvian law, or to any rule of civil procedure, regulation or statute under Latvian law that prohibits gathering of evidence via § 1782. Accordingly, the third discretionary factor also supports allowing Mr. Fils to serve the Subpoena upon Zip Aviation.

*Fourth,* the discovery Mr. Fils seeks is not "unduly intrusive or burdensome." *Intel,* 542 U.S. at 265. Mr. Fils, through the Application, seeks information for a narrowly tailored timeframe—indeed, over the course of just one month—that is relevant to the Latvian Proceedings. The Subpoena seeks specific information and documents concerning the circumstances of the reservation, leasing, use, and passenger manifests for the helicopter or helicopters on which Ms. Bernahl and Mr. Bernahl were passengers during the time period when Ms. Bernahl was married to Mr. Fils. These requests are not overly intrusive, but rather, are narrowly tailored to identify documents that are relevant to the Latvian Proceedings, while minimizing the burden on Zip Aviation.

## **CONCLUSION**

For the forgoing reasons, Mr. Olegs Fils respectfully requests that this Court issue an order permitting the service of the attached Subpoena pursuant to 28 U.S.C. § 1782.

Dated:  September 2, 2020                    Respectfully submitted,

                                                            **EVERSHEDS SUTHERLAND (US) LLP**

                                                             /s/ *Sarah E. Paul*
                                                            Sarah E. Paul
                                                            Attorney-in-Charge
                                                            Eversheds Sutherland (US) LLP
                                                            1114 Avenue of the Americas
                                                            New York, NY 10036
                                                            Tel:  212-389-5000
                                                            Fax:  212-389-5099
                                                            SarahPaul@eversheds-sutherland.com