UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

In Re Application of

OLEGS FILS,

                Petitioner.

-----------------------------------------------------------X

Misc. Case No: 1:20-mc-00313

AMENDED *EX PARTE* APPLICATION FOR THE ISSUANCE OF SUBPOENAS DUCES TECUM PURSUANT TO 28 U.S.C. § 1782 TO ZIP AVIATION, LLC AND 336 LIQUOR STORE, INC. d/b/a CRUSH WINE & SPIRITS

**MEMORANDUM OF LAW IN SUPPORT OF AMENDED *EX PARTE* APPLICATION FOR THE ISSUANCE OF SUBPOENAS DUCES TECUM PURSUANT TO 28 U.S.C. § 1782 TO ZIP AVIATION, LLC AND 336 LIQUOR STORE, INC. d/b/a CRUSH WINE & SPIRITS**

**EVERSHEDS SUTHERLAND (US) LLP**

Sarah E. Paul
Attorney-in-Charge
Eversheds Sutherland (US) LLP
1114 Avenue of the Americas
New York, NY 10036
Tel: 212-389-5000
Fax: 212-389-5099
SarahPaul@eversheds-sutherland.com

**COUNSEL FOR PETITIONER**

42636464.1

i

# TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ................................................................................................1

**STATEMENT OF FACTS** .........................................................................................................3

**ARGUMENT** ..............................................................................................................................8

    I.      **Mr. Fils's Application Easily Meets the Threshold Requirements of Section 1782** ...................................................................................................10

    II.     **The Discretionary *Intel* Factors Weigh in Favor of Granting Mr. Fils's Application** ......................................................................................11

**CONCLUSION** ........................................................................................................................16

## **TABLE OF AUTHORITIES**

Page

**CASES**

*In re Application of Aldunate*,
   3 F.3d 54 (2d Cir. 1993)......................................................................................................8

*In re Application of Euromepa S.A.*,
   51 F.3d 1095 (2d Cir. 1995)..........................................................................................12, 13

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
   No. CIV.M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ....................................10

*In re Application of Hill*,
   No. M19-1 17 (RJH), 2005 U.S. Dist. LEXIS 10838 (S.D.N.Y. June 3, 2005) ........................1

*In re Application of Microsoft Corp.*,
   428 F. Supp. 2d 188 (S.D.N.Y. 2006)..................................................................................2, 9

*In re Auto-Guadeloupe Investissement S.A.*,
   No. 12 MC 221 RPP, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)......................................13

*In re Bayer AG,*
   146 F.3d 188, 194 (3d Cir. 1998)..........................................................................................15

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F .3d 76, 81 (2d Cir. 2012)...............................................................................................8

*In re Chevron Corp.*,
   633 F.3d 153 (3d Cir. 2011)..................................................................................................13

*In re Chevron Corp.*,
   709 F. Supp. 2d 283 (S.D.N.Y. 2010)...................................................................................13

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002)............................................................................................10, 11

*In re Esses*,
   101 F.3d 873 (2d Cir. 1996)....................................................................................................1

*In re Gushlak*,
   No. 11-MC-218 NGG, 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012)......................................1

*In re Hornbeam Corp.*,
   No. 14MISC424PART1, 2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015),
   *aff'd*, 722 F. App'x 7 (2d Cir. 2018) and *aff'd*, 2017 WL 5515857 (S.D.N.Y.
   Feb. 17, 2017) ........................................................................................................................1

# TABLE OF AUTHORITIES
## (Continued)

Page

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ................................................................................................ *passim*

*Lancaster Factoring Co. v. Mangone*,
   90 F.3d 38 (2d Cir. 1996) ..................................................................................................11

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) .............................................................................................10

*In re Merck & Co.*,
   197 F.R.D. 267 (M.D.N.C. 2000) .....................................................................................11

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
   No. CIV1:08CV269LEK/RFT, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ................15

*RTI Ltd. v. Aldi Marine Ltd.*,
   523 F. App'x 750 (2d Cir. 2013) ......................................................................................11

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79 (2d Cir. 2004) ...............................................................................................13

*In re Servicio Pan Americana de Proteccion C.A.*,
   354 F.Supp.2d 269 (S.D.N.Y. 2004) .................................................................................15

## RULES STATUTES

28 U.S.C. § 1782 .......................................................................................................... *passim*

28 U.S.C. § 1782(a) ............................................................................................................2, 10

Latvian Civil Procedure Law Article 137(1) .............................................................................4

Latvian Civil Procedure Law Article 140(1) .............................................................................4

Petitioner Olegs Fils ("Mr. Fils"), by his counsel, hereby submits this Memorandum of Law In Support of Amended Ex Parte Application for the Issuance of Subpoenas Duces Tecum Pursuant to 28 U.S.C. § 1782 to Zip Aviation, LLC and 336 Liquor Store, Inc. d/b/a Crush Wine & Spirits (the "Application"), for the purpose of obtaining discovery from Zip Aviation, LLC ("Zip Aviation") and 336 Liquor Store, Inc. d/b/a Crush Wine & Spirits ("Crush Wine & Spirits") in connection with proceedings currently before a court in Latvia (Case No.C30657918) (the "Latvian Proceedings").[1]  Mr. Fils's proposed Rule 45 subpoenas (the "Subpoenas") to Zip Aviation and Crush Wine & Spirits are attached hereto as Exhibits 1 and 2, respectively.

## PRELIMINARY STATEMENT

The purpose of 28 U.S.C. § 1782 is to assist foreign courts and litigants in situations exactly like this one.  The documents requested by the Subpoenas are critical to the Latvian Proceedings, yet will be difficult if not impossible for the Latvian court to reach.  Consistent with the liberal discovery provided under the Federal Rules, the standard to issue a subpoena under § 1782 is low, especially when the recipient of the subpoena is not a party to the foreign proceeding.

Section 1782 authorizes a federal district court to order discovery of documents and testimony for use in a foreign proceeding from any person who resides or is found in the court's district:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use

---

[1] Mr. Fils requests this Order *ex parte,* as is routine in Section 1782 applications.  *See In re Gushlak*, No. 11-MC-218 NGG, 2012 WL 1514824, at *3 (E.D.N.Y. Apr. 30, 2012) (stating that "[r]espondents' argument that granting the application ex parte somehow prejudiced [respondent's] due process rights is frivolous" and explaining that "courts routinely grant § 1782 applications ex parte, limiting respondents' challenges to after the subpoena is served") (internal citations omitted); *accord In re Esses,* 101 F.3d 873, 874 (2d Cir. 1996); *In re Application of Hill,* No. M19-1 17 (RJH), 2005 U.S. Dist. LEXIS 10838, at *1 (S.D.N.Y. June 3, 2005).   It is widely recognized that Section 1782 applications are properly handled *ex parte*, and the fact that Mr. Fils brings a Section 1782 application is alone understood as a "good and sufficient reason[ ]" for proceeding *ex parte*.  *In re Hornbeam Corp.*, No. 14MISC424PART1, 2015 WL 13647606, at *4 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018), and *aff'd*, 2017 WL 5515857 (S.D.N.Y. Feb. 17, 2017).

1

>in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made … upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

A successful application must meet three requirements: (1) the person(s) from whom discovery is sought must reside or be "found" in the district of the court issuing the discovery order; (2) the discovery must be "for use in" a proceeding before a foreign or international tribunal; and (3) the applicant must be an "interested person." 28 U.S.C. § 1782(a); *see Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 256-59 (2004) (discussing the statutory prerequisites); *In re Application of Microsoft Corp.,* 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (same). Because all three requirements are met here, this Application should be granted.

Specifically, Zip Aviation, which is a helicopter tour company located in this district, and Crush Wine and Spirits, a liquor store located in this district, possess documents and information concerning the circumstances of infidelity committed by Ms. Santa Bernahl (previously – Ms. Zamuele) ("Ms. Bernahl"), Mr. Fils's former wife, and her then-lover, now husband, Mr. David Bernahl ("Mr. Bernahl"). Mr. Fils is an "interested person" because he is a party to the Latvian Proceedings (the claimant), and his counsel in Latvia intends to use the documents obtained from Zip Aviation and Crush Wine & Spirits in the Latvian Proceedings. Upon information and belief, Zip Aviation and Crush Wine & Spirits possess documents that will assist in demonstrating that Ms. Bernahl was unfaithful to Mr. Fils in at least August 2017, December 2017 and February 2018, while Mr. Fils and Ms. Bernahl were still married, thus justifying the cancellation of the various gift agreements that are at the heart of the Latvian Proceedings.

In addition, the four discretionary factors analyzed by courts when considering § 1782 applications—the so-called "*Intel* factors"—all support an order authorizing the Subpoenas seeking discovery from Zip Aviation and Crush Wine & Spirits. *See Intel,* 542 U.S. at 264.

**STATEMENT OF FACTS**

Mr. Fils and Ms. Bernahl married on October 1, 2016. In early 2018, Ms. Bernahl told Mr. Fils she wanted a divorce. *See* Decl. of Olegs Fils. The couple divorced on March 29, 2018 upon Ms. Bernahl's initiative. *See* Decl. of Olegs Fils. During their marriage, Mr. Fils gifted to Ms. Bernahl numerous valuable belongings and funds valued at several million *Euros*. *See* Decl. of Olegs Fils. These gifts, which are the subject of various gift agreements, included, but were not limited to, the following: Harry Winston engagement ring (valued at 199 600,00 EUR); Tiffany & Co jewelry set consisting of earrings and a necklace (valued at 18 000,00 EUR); Harry Winston Chandelier Cluster earrings (valued at 88 400,00 EUR); Rolex watch (valued at 9 600,00 EUR); a Porsche Macan (valued at 67 760,00 EUR); a Porsche Turbo (valued at 133 100,00 EUR); IWC Da Vinci Automatic Moon Phase 36 alligator watch (valued at 15 400,00 EUR); and 3 600 000,00 EUR in cash. *See* Decl. of Olegs Fils.

After the couple divorced, Mr. Fils discovered that Ms. Bernahl had been in an extra-marital relationship with Mr. Bernahl. *See* Decl. of Olegs Fils. Mr. Fils discovered posts from private social media accounts in which Mr. and Ms. Bernahl are seen exchanging loving words with each other and are seen embracing and kissing while posing for pictures in New York and elsewhere during the time Mr. Fils and Ms. Bernahl were still married. *See* Decl. of Olegs Fils. Mr. and Mrs. Bernahl married in July 2018—just months after Mr. Fils and Ms. Bernahl's divorce was finalized and Mr. Fils learned of the affair. *See* Decl. of Olegs Fils. The couple resides together in California.

In light of these circumstances, Mr. Fils has sought to recover the sentimental items and a portion of the funds he gifted to Ms. Bernahl, valued at approximately €2.4 million that are the subject of the various gift agreements, in the Latvian Proceedings. *See* Decl. of Olegs Fils. The legal basis of the claim in Latvia is gross ingratitude of Ms. Bernahl towards her then-spouse, Mr. Fils, as well as her sole role in the breakdown of the couple's marriage. *See* Decl. of Olegs Fils; Decl. of Agris Bitans.

Upon information and belief, around the time of the divorce, Ms. Bernahl covertly carried out several transactions to dispose of or transfer *de facto* all her valuable assets, aiming to circumvent any claims to those assets Mr. Fils might have post-divorce. Some funds were transferred to foreign accounts, but most of the assets were formally transferred to, or encumbered on behalf of, Ms. Bernahl's parents. Mr. Fils has therefore also brought claims to declare these transactions fraudulent and void within the Latvian Proceedings. *See* Decl. of Olegs Fils.

It should be noted that the Latvian court has already found that Ms. Bernahl acted in bad faith because she provided misleading information to the Latvian court and concealed her assets, including some of the property and funds Mr. Fils gifted her. *See* Decl. of Agris Bitans. The Latvian court has therefore repeatedly sustained Mr. Fils's applications to secure his claim by seizing movable property, real estate, and cash belonging to, as well as payments due to, the defendants in the Latvian Proceedings.[2] *See* Decl. of Agris Bitans.

Mr. Fils seeks discovery from Zip Aviation and Crush Wine & Spirits to aid in the Latvian Proceedings, because, upon information and belief, Zip Aviation and Crush Wine & Spirits possess

---

[2] Under Articles 137(1) and 140(1) of the Latvian Civil Procedure Law, the court may secure a claim provided, *inter alia*, there are reasonable grounds to believe that enforcement of the court judgment otherwise may become problematic or impossible (in this case— mostly due to concealment of assets, towards which the claim could be enforced), and that *prima facie* the claim has legal basis. *See* Decl. of Agris Bitans.

4

documents and information concerning the infidelity committed by Ms. Bernahl and her then-lover, Mr. Bernahl, as well as Ms. Bernahl's gross ingratitude towards Mr. Fils.

On July 5, 2018, Mr. Bernahl posted a photo on his Instagram social media profile @dbernahl, where he is pictured embracing Ms. Bernahl at a Manhattan helipad with a Zip Aviation helicopter in the background. *See* Decl. of Olegs Fils. This photo appears to have been taken in August 2017, based in part on the construction progress of the New York skyscrapers in the background of the picture. Additionally, Ms. Bernahl's credit card statement reflects charges by Zip Aviation on August 12 and 13, 2017, in the amounts of $3,765.00 and $3,880.00, respectively.

During the final months of 2017 and first months of 2018 Ms. Bernahl took multiple trips to the United States. Several of the charges on Ms. Bernahl's credit card statements are by businesses in and near Carmel, California, where Mr. Bernahl lived at the time and where the couple, now married, lives.[3] *See* Decl. of Olegs Fils. This indicates that Ms. Bernahl may have stayed in Mr. Bernahl's hometown for many weeks while still married to Mr. Fils (including in December 2017, and January and February 2018). *See* Decl. of Olegs Fils. It is believed that Ms. Bernahl spent most, if not all, of that time in the company of her lover, Mr. Bernahl. For example, on December 8, 2017, Mr. Bernahl posted a picture on his private Instagram social media profile @dbernahl, where Mr. and Ms. Bernahl can be seen embracing in a loving gesture. *See* Decl. of Olegs Fils. Mr. Bernahl has captioned the picture with the text "Luckiest guy in the world... (continued)". It is also noteworthy that Ms. Bernahl "liked" this picture through her account @santazamuele, thus expressing that she shares Mr. Bernahl's romantic sentiment towards her. *See* Decl. of Olegs Fils.

---

[3] The address where Mr. Bernahl lived at the time is the same address reflected (and redacted) in Exhibit 2. The redaction will be removed upon service of process of Exhibit two to Crush Wine & Spirits.

On January 16, 2018, Mr. Bernahl posted another picture, where the couple can be seen in a similar pose, captioned "Moments #♥" (also "liked" by Ms. Bernahl). *See* Decl. of Olegs Fils. On January 26, 2018, Mr. Bernahl posted a picture of Ms. Bernahl's children, which is geotagged as having been taken in Big Sur, California. *See* Decl. of Olegs Fils. This and other evidence (all of which Mr. Fils came to know only after his divorce with Ms. Bernahl) suggests Mr. and Ms. Bernahl spent time in California in December 2017 and January and February 2018 as a couple.

During the time spent together, Ms. Bernahl also provided direct financial assistance to her lover, using funds accumulated in her bank account that were mostly comprised of the cash Mr. Fils had gifted to her. *See* Decl. of Olegs Fils. As evidenced by her bank account statement, on December 13, 2017, Ms. Bernahl issued a "short term loan" of $8,000 to Mr. Bernahl. *See* Decl. of Olegs Fils.

Ms. Bernahl's credit card statement reflects charges by Crush Wine & Spirits—a New York liquor store—on December 11, 2017 in the amount of $3,942.78. At the time of the charge Ms. Bernahl was in Riga, Latvia, preparing to leave for the United States. *See* Decl. of Olegs Fils. Ms. Bernahl's credit card statement also reflects a charge by Crush Wine & Spirits on February 1, 2018 in the amount of $2,008.01, and Mr. Fils's account statement likewise reflects a charge by Crush Wine & Spirits, also on February 1, 2018, for $719.80, while Ms. Bernahl was in California and likely in the company of Mr. Bernahl. *See* Decl. of Olegs Fils. Ms. Bernahl paid her credit card bills mainly with funds gifted to her by Mr. Fils during their marriage. *See* Decl. of Olegs Fils. Considering the nature of Mr. and Ms. Bernahl's relationship, it is believed that Ms. Bernahl made the wine purchases from Crush Wine & Spirits to be delivered to Mr. Bernahl's residence.

Through the Subpoenas, Mr. Fils seeks documents and information showing that Mr. and Ms. Bernahl used Zip Aviation's services together while Ms. Bernahl was still married to Mr.

Fils—namely that Ms. Bernahl spent money gifted to her by her then-spouse, Mr. Fils, to cover expenses while on vacation with her then-lover—Mr. Bernahl. Charges from Zip Aviation appear on Ms. Bernahl's credit card statement, and social media posts support that Ms. Bernahl was in New York at that time, with Mr. Bernahl, and involved in an extra-marital affair with him.

Mr. Fils also seeks documents and information from Crush Wine & Spirits showing that Ms. Bernahl purchased wine, liquor, and/or spirits from that merchant, which, on belief, she had shipped to Mr. Bernahl at his home in California. This belief is based on the fact that Mr. Bernahl lived in California at that time, and that the charges by Crush Wine & Spirits were made (1) while Ms. Bernahl was in Riga, Latvia (as to the charge on December 11, 2017), and (2) during Ms. Bernahl's trip to California from January to February 2018 (as to the charges on February 1, 2018). Additionally, social media posts around February 2018 demonstrate that Mr. and Ms. Bernahl spent time together in the U.S. and were involved in a romantic relationship.

Although the dates of the charges by Zip Aviation and Crush Wine & Spirits appear on Ms. Bernahl's credit card statement and on Mr. Fils's account statement and are known, the exact dates when Ms. Bernahl used the services of Zip Aviation and made purchases from Crush Wine & Spirits are unknown. *See* Decl. of Agris Bitans. Therefore, it is necessary to request documents based on the available transaction information and a date range before and after the transaction dates.

Documents showing Ms. Bernahl traveling with Mr. Bernahl as a couple at a time when Ms. Bernahl was married to Mr. Fils would be used as evidence in the Latvian Proceedings to show that Ms. Bernahl was unfaithful to Mr. Fils in at least August 2017, and that Ms. Bernahl paid for her and her lover's luxury expenses with funds gifted to her by her then-husband Mr. Fils. *See* Decl. of Agris Bitans. Likewise, documents showing that Ms. Bernahl sent gifts from Crush

7

Wine & Spirits to Mr. Bernahl while she was still married to Mr. Fils would be used as evidence in the Latvian Proceedings to show that Ms. Bernahl was unfaithful to Mr. Fils in December 2017 and February 2018. This would ultimately demonstrate Ms. Bernahl's fault in the dissolution of her marriage with Mr. Fils and gross ingratitude by Ms. Bernahl towards Mr. Fils, and thus could support the claims of Mr. Fils in the Latvian Proceedings to cancel the gift agreements and recover the gifts. *See* Decl. of Agris Bitans.

## ARGUMENT

Section 1782(a) provides, in relevant part, that: [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal .... The order may be made ... upon the application of any interested person .... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. 28 U.S.C. § 1782. The highly-relevant and narrowly-tailored discovery sought by Mr. Fils is precisely the sort of discovery contemplated by 28 U.S.C. § 1782. Section 1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel,* 542 U.S. at 247. The evolutionary process of this effort has led to a discovery device that has had "increasingly broad applicability." *See In re Application of Aldunate,* 3 F.3d 54, 57 (2d Cir. 1993). The "twin-aims" of Section 1782 illustrate its broad applicability: to "provid[e] [an] efficient means of assistance to participants in international litigation in our federal courts and [to] encourag[e] foreign countries by example to provide similar means of assistance to our courts." *Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 81 (2d Cir. 2012) (citations and internal quotations omitted).

8

With those aims in mind, the Court must first determine whether the applicant satisfies three threshold requirements: (1) the person from whom discovery is sought must reside or be found in the jurisdiction of the district court to which the application is made; (2) the discovery must be "for use in" a proceeding before a foreign tribunal; and (3) the application must be made by an "interested person" as related to the underlying foreign proceeding. *See* 28 U.S.C § 1782; *In re Microsoft,* 428 F. Supp. 2d at 192.

Once the Court determines that the three threshold requirements are met, the Court may also consider four discretionary factors, known as the *Intel* factors, to determine the appropriateness of ordering discovery, namely, whether: (1) the documents and testimony sought are within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the foreign court or government would be receptive to U.S. federal-court assistance, in consideration of the nature of the foreign tribunal and the character of the proceedings underway abroad; (3) the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) the subpoena contains unduly intrusive or burdensome requests. *In re Microsoft,* 428 at 192-93 (citing *Intel,* 542 U.S. at 264-65).

As discussed in further detail below, Mr. Fils's application satisfies all three threshold statutory requirements, and each discretionary factor weighs in favor of permitting the Subpoenas to Zip Aviation and Crush Wine & Spirits. The use of Section 1782 to obtain discovery from Zip Aviation and Crush Wine & Spirits will promote efficiency and transparency in the Latvian Proceedings, and may also encourage the Latvian court to provide reciprocal assistance if the time should arise when a party seeks similar assistance from the Latvian court. Accordingly, this Court should issue an order permitting the service of the Subpoenas pursuant to 28 U.S.C. § 1782.

### I. Mr. Fils's Application Easily Meets the Threshold Requirements of Section 1782.

*First,* the Application meets the initial requirement of Section 1782 because Zip Aviation and Crush Wine & Spirits "reside[] or [are] found in" the Southern District of New York. 28 U.S.C. § 1782(a). Specifically, Zip Aviation maintains an office at the Downtown Manhattan Heliport in New York City; Crush Wine & Spirits is located at 153 East 57th Street, FRNT 1, New York, NY 10022-2119.[4] Therefore, they are "physically present" in the Court's jurisdiction. *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. CIV.M19-88 BSJ, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) (determining that the threshold requirements of Section 1782 were met and noting that respondent "maintains its headquarters in New York, and thus is 'found' within the district"). Further, Ms. Bernahl's credit card statement reflects payments to these companies, listed on her credit card statement as "ZIP AVIATION MANH," in August 2017 and "CRUSH WINE & SPIRITS" in December 2017 and February 2018, and Mr. Fils's account statement reflects a payment listed as "CRUSH WINE & SPIRITS" in February 2018. *See* Declaration of Olegs Fils. *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002).

*Second,* the Application satisfies the next prong of the Section 1782 analysis because the requested discovery is "for use in" the Latvian Proceedings, which constitute "foreign proceedings." *Intel Corp.*, 542 U.S. at 257-58 (noting that Section 1782 includes conventional civil proceedings in foreign tribunals). *See also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail."). Here, Mr. Fils intends to use the documents

---

[4] It appears that 336 Liquor Store, Inc.'s corporate office is located at 336 9th Avenue, New York, NY 10001-1604.

obtained from Zip Aviation and Crush Wine & Spirits to demonstrate that Ms. Bernahl, his wife at the time, carried on an extra-marital affair. *See* Decl. of Agris Bitans. Such documents will help Mr. Fils demonstrate that Ms. Bernahl showed gross ingratitude towards Mr. Fils and was the sole promoter of breakdown of their marriage. Under Latvian law, Ms. Bernahl's (1) gross ingratitude and (2) her sole role in the breakdown of the marriage each constitute an independent legal basis for cancellation of the gift agreements between Mr. Fils and Ms. Bernahl. *See* Decl. of Agris Bitans.

*Third*, Mr. Fils satisfies the "interested person" requirement of Section 1782. The definition of that phrase is interpreted broadly to "include [] a party to the foreign litigation, whether directly or indirectly involved," *In re Merck & Co.,* 197 F.R.D. 267, 270 (M.D.N.C. 2000), as well as a party that has "a reasonable interest in obtaining judicial assistance." *See RTI Ltd. v. Aldi Marine Ltd.*, 523 F. App'x 750, 752 (2d Cir. 2013) (citing *Intel,* 542 U.S. at 256-57). *See also Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes "a party to the foreign ... litigation."). Here, Mr. Fils is a party to the Latvian Proceedings (the claimant), and he has "a reasonable interest in obtaining judicial assistance." *See RTI Ltd.*, 523 F. App'x at 752. *See also* Decl. of Olegs Fils. Accordingly, Mr. Fils qualifies as an "interested person" within any fair construction of that phrase. *See id.*

## II. The Discretionary *Intel* Factors Weigh in Favor of Granting Mr. Fils's Application.

Where, as here, the Application meets the statutory requirements of Section 1782, the Court has broad discretion to grant the Application. *See In re Edelman,* 295 F.3d at 181. The "twin aims" of Section 1782, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar

11

means of assistance to our courts," suggest that a court should lean "heavily in favor of generous federal court assistance." *See In re Gemeinshcaftspraxis,* 2006 WL at *4 (citation and internal quotations omitted); *In re Application of Euromepa S.A.,* 51 F.3d 1095, 1102 (2d Cir. 1995). The four discretionary factors applied by the courts, considered in light of these twin aims, weigh in favor of allowing the Application.

*First,* it would be difficult, if not impossible, for Mr. Fils to obtain the requested discovery absent this Court's assistance and approval of the Application. Because Zip Aviation and Crush Wine & Spirits are not participants in the Latvian Proceedings, the Latvian court lacks jurisdiction to compel these businesses to produce the information and documents outlined in the Subpoenas. The Supreme Court noted in *Intel* that when discovery is sought from a participant in the foreign proceeding (unlike Zip Aviation and Crush Wine & Spirits here), the need for Section 1782 aid may not be as apparent as it ordinarily is when evidence is sought from a nonparticipant in the foreign proceeding. *Intel,* 542 U.S. at 264. In contrast, nonparticipants who are outside the foreign tribunal's jurisdictional reach – such as Zip Aviation and Crush Wine & Spirits– may have relevant evidence not obtainable by the tribunal without the aid of Section 1782. *Id.*

Here, the interests of fairness and comity favor granting Mr. Fils's Application because the Latvian court has no authority to compel third parties like Zip Aviation and Crush Wine & Spirits to produce the requested materials, as nothing in the Latvian disclosure regime applies extra-territorially to these non-parties or could otherwise be used to obtain disclosure of these documents. The only other potential option to obtain this evidence would be through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters; however, this route is complex, drawn out, and may ultimately be unsuccessful. Thus, the first of the

12

discretionary factors favors Mr. Fils. *See In re Chevron Corp.,* 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010).

*Second,* there is no indication that the Latvian court would be unreceptive to judicial assistance from a federal court. *See In re Chevron Corp.,* 633 F.3d 153, 162 (3d Cir. 2011) (stating that "[i]nasmuch as relevant evidence is presumptively discoverable, the party opposing discovery under section 1782(a) has the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application") (internal quotations omitted) (citations omitted). *See also* Decl. of Agris Bitans. Indeed, courts are reluctant to deny a Section 1782 application absent "'authoritative proof' that a foreign [tribunal] would reject §1782 assistance." *In re Auto-Guadeloupe Investissement S.A.,* No. 12 MC 221 RPP, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012) (citing *In re Application of Euromepa S.A.,* 51 F.3d at 1099). Put another way, a court should only rely upon a "clear directive" from the foreign jurisdiction in opposition to assistance from a federal court. *See In re Application of Euromepa S.A.,* 51 F.3d at 1100; *see, e.g., Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 84 (2d Cir. 2004) (finding foreign court unreceptive to American judicial assistance where foreign ministry of justice and prosecutor made specific requests to the district court to deny the discovery sought). A district court should not attempt to evaluate the foreign tribunal's receptiveness. *See In re Application of Euromepa S.A.,* 51 F.3d at 1099 ("We think that it is unwise - as well as in tension with the aims of section 1782 - for district judges to try and glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law."); *In re Gemeinshcaftspraxis,* 2006 WL 3844464, at *6 (stating that "proof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery"); *see, e.g., In re Auto-Guadeloupe Investissement S.A.,* 2012 WL 4841945, at*6

13

(concluding that respondent failed to present "authoritative proof" that the French court would reject Section 1782 assistance where respondent's proof- including French statutes and legislative history- "only concern[ed] general principles of discovery under French civil law"). Here, because there is no indication that the Latvian court would be unreceptive to the Court's assistance, the second discretionary factor weighs in favor of Mr. Fils.

*Third,* the Application is not an attempt to avoid foreign evidence-gathering restrictions, but instead is a good-faith request to obtain information that will be admissible in the Latvian Proceedings. This discretionary factor is not about whether the foreign court's discovery rules provide a means to access the requested information. *See Intel,* 542 U.S. at 247 (stating that "§ 1782 contains no threshold requirement that evidence sought from a district court would be discoverable under the law governing the foreign proceeding"). Instead, the only issue is whether Mr. Fils's Application is a good faith attempt to obtain relevant, necessary evidence that he may not otherwise be able to obtain. *See In re Gemeinschaftspraxis,* 2006 WL 3844464, at *7 (finding that the applicant "has a good faith belief that it will be able to use the evidence" and concluding that "[a]bsent any indication of bad faith on [applicant's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor"). Here, Mr. Fils's Application is made with the good faith belief that the discovery will lead to evidence that is relevant to the annulment of the gift agreements, proving gross ingratitude of Ms. Bernahl, as well as proving Ms. Bernahl's sole role in the breakdown of the couple's marriage that is the subject of the pending Latvian Proceedings. There is nothing pursuant to Latvian law, or to any rule of civil procedure, regulation or statute under Latvian law that prohibits gathering of evidence via § 1782.

Furthermore, the fact that discovery rules under Latvian civil procedure are not identical to the Federal Rules of Civil Procedure does not signify an attempt to circumvent foreign evidence-

gathering restrictions. *See Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. CIV1:08CV269LEK/RFT, 2008 WL 3884374, at *7 (N.D.N.Y. Aug. 18, 2008) ("There is no reason to assume that a country that has not adopted a discovery requirement as extensive as ours would be either offended or reject the assistance.") (citing *In re Bayer AG,* 146 F.3d 188, 194) (3d Cir. 1998)); *see also In re Servicio Pan Americana de Proteccion C.A.,* 354 F.Supp.2d 269, 275 **(**S.D.N.Y. 2004) (stating that "a foreign court's procedural discovery limitations, as opposed to substantive limits on the admissibility of discovered evidence, should not prevent a district court from enabling a foreign litigant to obtain admissible evidence here pursuant to Section 1782"). Accordingly, the third discretionary factor also supports allowing Mr. Fils to serve the Subpoenas upon Zip Aviation and Crush Wine & Spirits.

*Fourth,* the discovery Mr. Fils seeks is not "unduly intrusive or burdensome." *Intel,* 542 U.S. at 265. Mr. Fils, through the Application, seeks information for a narrowly tailored timeframe—indeed, over the course of just one month for Zip Aviation and for 22 days for Crush Wine & Spirits (approximately eleven days for each of the two dates on which purchases are reflected on Ms. Bernahl's credit card statement and Mr. Fils's account statement)—that is relevant to the Latvian Proceedings. The Subpoenas seek specific information and documents concerning the details of the purchases made at Crush Wine & Spirits and the circumstances and details of the reservation, leasing, use, and passenger manifests for the helicopter or helicopters of Zip Aviation on which Ms. Bernahl and Mr. Bernahl were passengers during the time-period when Ms. Bernahl was married to Mr. Fils. These requests are not overly intrusive, but rather, are narrowly tailored to identify documents that are relevant to the Latvian Proceedings, while minimizing the burden on Zip Aviation and Crush Wine & Spirits.

## CONCLUSION

For the forgoing reasons, Mr. Olegs Fils respectfully requests that this Court issue an order permitting the service of the attached Subpoenas pursuant to 28 U.S.C. § 1782.

Dated:  November 17, 2020        Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

 /s/ *Sarah E. Paul*
Sarah E. Paul
Attorney-in-Charge
Eversheds Sutherland (US) LLP
1114 Avenue of the Americas
New York, NY 10036
Tel:  212-389-5000
Fax:  212-389-5099
SarahPaul@eversheds-sutherland.com