UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

In Re Application of

OLEGS FILS,

           Petitioner.

-----------------------------------------------------------X

Misc. Case No: 1:20-mc-00313

AMENDED *EX PARTE* APPLICATION FOR THE ISSUANCE OF SUBPOENAS DUCES TECUM PURSUANT TO 28 U.S.C. § 1782 TO ZIP AVIATION, LLC AND 336 LIQUOR STORE, INC. d/b/a CRUSH WINE & SPIRITS

**DECLARATION OF MR. AGRIS BITANS IN SUPPORT OF MEMORANDUM OF LAW IN SUPPORT OF AMENDED *EX PARTE* APPLICATION FOR THE ISSUANCE OF SUBPOENAS DUCES TECUM PURSUANT TO 28 U.S.C. § 1782 TO ZIP AVIATION, LLC AND 336 LIQUOR STORE, INC. d/b/a CRUSH WINE & SPIRITS**

1. "My name is Agris Bitans. I am a citizen of the country of Latvia, and I currently reside in Riga, Latvia. I am over the age of twenty-one years old, I have never been convicted of a crime involving moral turpitude, and I am competent to make the statements contained herein. I declare under penalty of perjury that the foregoing is true and correct and within my personal knowledge.

2. I am a lawyer and represent Olegs Fils ("Mr. Fils"), the claimant in proceedings currently before a court in Latvia (Case No.C30657918) (the "Latvian Proceedings") against his former wife, Ms. Santa Bernahl (previously – Ms. Zamuele) ("Ms. Bernahl"). In this capacity, I have personal knowledge regarding the facts contained in this affidavit.

3. After Ms. Bernahl and Mr. Fils divorced in March 2018, Mr. Fils discovered that Ms. Bernahl had been involved in an extra-marital relationship with Mr. David Bernahl ("Mr. Bernahl"). This discovery came, in part, through posts from private social media accounts, in which Mr. and Ms. Bernahl are seen embracing and kissing during the time Ms. Bernahl and Mr.

1



Fils were still married and before the time Ms. Bernahl instituted divorce proceedings. As an example, Mr. Fils has provided me with an Instagram post on Mr. Bernahl's account in which Mr. and Ms. Bernahl are pictured in front of a Zip Aviation, LLC ("Zip Aviation") helicopter at the Downtown Manhattan Heliport in New York City. It appears that the photo was taken in August 2017. *See* Exhibit A, photo of Mr. and Mrs. Bernahl. In addition, the case materials of the Latvian Proceedings contain the following relevant Instagram posts:  In Mr. Bernahl's posts from December 8, 2017 and January 16, 2018 (at the time when Ms. Bernahl was visiting California, where Mr. Bernahl resides), Mr. and Ms. Bernahl are pictured embracing, while the captions read "Luckiest guy in the world... (continued)" and "Moments #♥", respectively. *See* Exhibits B and C, photos of Mr. and Ms. Bernahl. In Mr. Bernahl's post from January 26, 2018, geotagged as having been taken in Big Sur, California, Ms. Bernahl's children are pictured. *See* Exhibit D, photo of Ms. Bernahl's children.

4.  As a result of Ms. Bernahl's infidelity, Mr. Fils has instituted claims in the Latvian Proceedings seeking to cancel several gift agreements he entered into with Ms. Bernahl, on the basis of gross ingratitude and for her fault in the dissolution of the marriage. In the Latvian Proceedings, Mr. Fils seeks to recover items and funds valued at €2.4 million from Ms. Bernahl that Mr. Fils gifted to her. Ms. Bernahl has disposed of or transferred most of her assets, including these gifts and monies, to foreign accounts and/or to family members. As a result, Mr. Fils has also instituted claims in the Latvian Proceedings seeking to declare some of Ms. Bernahl's transfers and concealment of these items and funds as null and void.

5.  The Latvian court has already found that Ms. Bernahl acted in bad faith because she has provided misleading information to the Latvian court and she concealed the property and funds Mr. Fils gifted her. Under Articles 137(1) and 140(1) of the Latvian Civil Procedure Law, the court may secure a claim provided, *inter alia*, there are reasonable grounds to believe that



enforcement of the court judgment otherwise may become problematic or impossible (in this case, mostly due to concealment of assets, towards which the claim could be enforced), and that *prima facie* the claim has a legal basis. The Latvian court has therefore repeatedly sustained Mr. Fils' applications to secure his claim by seizing movable property, real estate, and cash belonging to, as well as payments due to, the defendants in the Latvian Proceedings.

6. In order to demonstrate Ms. Bernahl's gross ingratitude and fault in the dissolution of the marriage, we must present evidence of Ms. Bernahl's infidelity and gross ingratitude towards Mr. Fils though other actions and attitudes.

7. Ms. Bernahl's credit card statement demonstrates that Ms. Bernahl used the funds that Mr. Fils gifted to her to pay for helicopter services provided by Zip Aviation on August 12 and 13, 2017, in the amount of $3,765.00 and $3,880.00, respectively, and for purchases from 336 Liquor Store, Inc. d/b/a Crush Wine & Spirits ("Crush Wine & Spirits") on December 11, 2017, in the amount of $3,942.78, and on February 1, 2018, in the amount of $2,008.01. *See* Exhibit E, Credit Card Statement of Ms. Bernahl. Likewise, Mr. Fils's account statement shows that Ms. Bernahl made a second charge at Crush Wine & Spirits on February 1, 2018 for $719.80. *See* Exhibit F, Account Statement of Mr. Olegs Fils for 2018. Although the dates the charges appear on Ms. Bernahl's credit card statement and Mr. Fils's bank account statement are known, the exact dates on when Ms. Bernahl used the services of Zip Aviation and made purchases from Crush Wines & Spirits are unknown.

8. The dates of the charges by Zip Aviation and social media posts indicate that Ms. Bernahl was in New York with Mr. Bernahl around the time of the charges. Thus, the documents Mr. Fils seeks from Zip Aviation are expected to show that Ms. Bernahl traveled with Mr. Bernahl and the nature of their travel. Documents showing Ms. Bernahl traveling with Mr. Bernahl as a couple at a time when Ms. Bernahl was married to Mr. Fils would be used as evidence in the

3



Latvian Proceedings to show that Ms. Bernahl was unfaithful to Mr. Fils in at least August 2017, and that Ms. Bernahl paid for her and her lover's luxury expenses with funds gifted to her by her then-husband Mr. Fils. This would ultimately demonstrate Ms. Bernahl's fault in the dissolution of her marriage with Mr. Fils and gross ingratitude by Ms. Bernahl towards Mr. Fils, and thus would support the claims of Mr. Fils in the Latvian Proceedings to cancel the gift agreements and recover the gifts.

9. Documents showing Ms. Bernahl having premium wine, liquor, and/or spirits delivered or shipped to Mr. Bernahl at a time when Ms. Bernahl was married to Mr. Fils would be used as evidence in the Latvian Proceedings to show that Ms. Bernahl was unfaithful to Mr. Fils in December 2017 and February 2018, and that Ms. Bernahl used funds gifted to her by her then-husband, Mr. Fils, to purchase gifts for her lover Mr. Bernahl. This would ultimately demonstrate Ms. Bernahl's fault in the dissolution of her marriage with Mr. Fils, her gross ingratitude towards Mr. Fils, and would support the claims of Mr. Fils in the Latvian Proceedings to cancel the gift agreements and recover the gifts.

10. Neither Zip Aviation nor Crush Wine & Spirits are participants in the Latvian Proceedings. Thus, apart from the Hague Convention, the Latvian court lacks any other reasonable method of compelling Zip Aviation and Crush Wine &Spirits to produce information and documents that will evidence and demonstrate Ms. Bernahl's infidelity.

11. There is nothing in Latvian law that would prevent Mr. Fils from utilizing such evidence in the Latvian Proceedings, and there is no indication that the Latvian court would be unreceptive to assistance from this Court.

12. Finally, were this information available in Latvia, the parties to the Latvian Proceedings would be able to obtain such discovery. But because this evidence is obtainable only from Zip Aviation and Crush Wine & Spirits—companies present only in the Southern District of



4

New York and not Latvia—this Court's assistance is required in obtaining the documents necessary to show that on August 12 and 13, 2017, Ms. Bernahl carried on an extra-marital affair while in New York, and that on December 11, 2017 and February 1, 2018, Ms. Bernahl made purchases, which were likely delivered to her then-lover. There is nothing pursuant to Latvian law, or to any rule of civil procedure, regulation or statute under Latvian law that prohibits gathering of evidence via Section 1782 and use of the same in the Latvian Proceeding.

13. The information Mr. Fils seeks from Zip Aviation is only for a narrowly tailored amount of time. Indeed, Mr. Fils seeks only documents for the dates of August 1 – 31, 2017, and at that, only documents related to Ms. Bernahl and Mr. Bernahl status as passengers of Zip Aviation. Thus, the subpoena is not unduly intrusive or burdensome.

14. The information Mr. Fils seeks from Crush Wine & Spirits is only for a narrowly tailored amount of time. Indeed, Mr. Fils seeks only documents for the dates of December 6, 2017 through December 16, 2017 and from January 27, 2018 through February 6, 2018, which are periods spanning five days before and after each of the two dates reflected on Ms. Bernahl's credit card statement (December 11, 2017 and February 1, 2018) and Mr. Fils's account statement (February 1, 2018) for the purchases she made from Crush Wine & Spirits. Likewise, as a result, the subpoena is not unduly intrusive or burdensome.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 17, 2020

_____
Agris Bitans"